STATE OF WEST VIRGINIA

*In re* D.S.

No. 17-0744 (Preston County 16-JA-60)

FILED

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.S., by counsel Jeremy B. Cooper, appeals the Circuit Court of Preston County's July 20, 2017, order terminating her parental rights to D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cheryl L. Warman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that she was involved in a motor vehicle accident in which the child was not properly restrained in the vehicle, that the driver of the vehicle was impaired due to the consumption of illegal drugs, and that petitioner allowed the child to be a passenger in a vehicle which was operated by an intoxicated driver. The DHHR also alleged that petitioner consumed illegal drugs with the driver prior to the accident and that her drug use impaired her ability to properly care for the child. The DHHR further alleged that petitioner's drug abuse and untreated mental illness caused her to abuse and neglect the child.

In August of 2016, the circuit court held a preliminary hearing and found that placing the child in petitioner's care "would be contrary to her welfare and best interests." Later in August, the circuit court held an adjudicatory hearing during which petitioner stipulated to failing to properly restrain the child during the vehicle collision and failing to address her issues with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

mental health and the use of controlled substances. The circuit court accepted her stipulation and granted a post-adjudicatory improvement period, which required that she (1) participate in supervised visitation, (2) participate in parenting classes, (3) submit to random drug screens, (4) submit to mental health and substance abuse treatment, and (5) undergo a psychological evaluation.

Several review hearings were held to assess petitioner's progress in her post-adjudicatory improvement period. The circuit court was advised that service providers were concerned that petitioner was overmedicating with prescription drugs, as she tested positive for illicit drugs and obtained drugs from multiple physicians, often for short periods of time. The circuit court ordered petitioner to utilize the services of only one primary care physician in order to alleviate concerns of "doctor shopping" and medication interactions for her diagnosed conditions. Despite the DHHR's concerns and recent positive drug screens, the circuit court extended petitioner's improvement period in March of 2017.

In June of 2017, the circuit court held two dispositional hearings to address petitioner's parental rights. Petitioner requested a post-dispositional improvement period or, in the alternative, a disposition pursuant to West Virginia Code § 49-4-604(b)(5).[2] The DHHR and the guardian moved the circuit court to terminate petitioner's parental rights. At disposition, a community corrections worker testified that petitioner tested positive for marijuana, alcohol, methamphetamine, buprenorphine, and morphine during the proceedings, and failed to report for drug screens after May 19, 2017. The worker further testified that, regarding petitioner's prescription drug use, her prescriptions were from multiple providers and for short durations which made it difficult to determine whether petitioner was taking her medications as prescribed. The worker finally testified that petitioner appeared for drug screens on two occasions and was so impaired that the worker was concerned for her safety. Similarly, a service provider testified that petitioner participated in services "as long as she was coherent." The provider also testified that petitioner would fall asleep, stumble, and write illegibly during some in-home parenting and adult life-skills sessions. A DHHR worker testified that petitioner failed to make any significant improvement during her improvement period, despite being provided with services and multidisciplinary team ("MDT") intervention. The DHHR worker also testified that petitioner was resistant to in-patient drug treatment and consistently stated that she did not have a drug abuse problem. Further, petitioner's intoxication led to the suspension of her supervised visitation with the child and she had no contact with the child after April of 2017.

Petitioner testified that she did not have a drug problem and did not neglect her child. She also testified that she completed parenting and adult life-skills classes, despite the provider's

---

[2]West Virginia Code § 49-4-604(b)(5) provides that

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

testimony to the contrary. According to petitioner, any issues with the completion of her services were due to the failure of the workers and service providers to contact her. She further testified that she stopped appearing for drug screening because of her employment and did not go to in-patient drug treatment because she could not afford to. At the conclusion of the hearing, the circuit court found that petitioner demonstrated an inadequate capacity to solve the issues of abuse and neglect on her own or with help, was habitually addicted to controlled substances to the extent that her parenting skills had been seriously impaired, and failed to follow through with treatment that could have improved her capacity for parental functioning. Ultimately, the circuit court terminated petitioner's parental and custodial rights upon findings that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare.[3] It is from the dispositional order dated July 20, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available. Specifically, petitioner argues that the circuit court could have granted her a post-dispositional improvement period. We disagree. Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a parent an improvement period at disposition if, "the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period . . . ." Here, petitioner was previously granted a post-adjudicatory improvement period. However, the record demonstrates that she could not establish a substantial change in circumstances since her initial improvement period or that she was likely to fully participate in a new improvement period.

---

[3]The father's parental rights remain intact. However, the circuit court found that he was unable to care for the child at the time of its ruling and left custody of the child with the DHHR. According to the parties, the permanency plan is for the child to remain in the home of a cousin.

Petitioner argues that she provided sufficient evidence to suggest that she stabilized her medications for her various health conditions, demonstrating a significant change in circumstances. However, petitioner testified at disposition that she did not have a substance abuse problem, even though she tested positive for marijuana at the outset of her improvement period and for other non-prescribed medications throughout the proceedings. Moreover, petitioner's "evidence" was her own self-serving testimony that she ceased taking any proscribed medications. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Petitioner failed to acknowledge her substance abuse problem throughout the entirety of the proceedings, claiming that her behavior was a result of the interaction of several prescribed medications. Petitioner ignores the fact that she was under the influence of controlled substances when she was in a collision in which her daughter was unrestrained, and tested positive for marijuana and other non-prescribed medications. Further, petitioner was instructed to see only one primary care physician in an effort to properly manage her medications but failed to follow through with that order. Accordingly, we agree with the circuit court's finding that petitioner failed to show that she was likely to participate in an improvement period or establish a substantial change in circumstances since her initial post-adjudicatory improvement period.

Next, petitioner argues that, in the alternative, the circuit court should have granted an alternative disposition pursuant to West Virginia Code § 49-4-604(b)(5), which would allow the child to remain in the custody of the DHHR and leave petitioner's parental rights intact. According to West Virginia Code § 49-4-604(b)(6), circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less[-]restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996).

Contrary to petitioner's argument, substantial evidence established that she failed to follow through with rehabilitative efforts. Petitioner continuously arrived to her classes while under the influence. At disposition, a service provider testified that petitioner often came to her

parenting classes in an incoherent state, stumbling, slurring her speech, and falling asleep. Petitioner also went to two supervised visits with the child while under the influence of controlled substances. At the time, petitioner refused medical assistance and insisted that she did not have a substance abuse problem. Her behavior was such that services were terminated due to her non-compliance and petitioner did not see the child after April of 2017. Moreover, the record demonstrates that petitioner's behavior escalated and she was arrested and indicted for her third offense of shoplifting, with all underlying occurrences happening during the extended post-adjudicatory improvement period. Given this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare, specifically noting that that there were no less-drastic alternatives than termination. As previously mentioned, circuit courts are to terminate parental rights upon such findings. Accordingly, we find no error.

Lastly, because the child remains in the custody of the DHHR and permanent placement has not been achieved pursuant to Rule 3(n) of the Rules of Procedure for Child Abuse and Neglect Proceedings, this Court reminds the circuit court of its duty to establish permanency for the child.[4] Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

---

[4]According to Rule 3(n) of the Rules of Procedure for Child Abuse and Neglect Proceedings,

"Permanent placement" of a child shall mean:

(1) The petition has been dismissed and the child has been returned to the home or to a relative with no custodial supervision by the Department;

(2) The child has been placed in the permanent custody of a non-abusive parent; or

(3) A permanent out-of-home placement of the child has been achieved following entry of a final disposition order. A permanent out-of-home placement has been achieved only when the child has been adopted, placed in a legal guardianship, placed in another planned permanent living arrangement (APPLA), or emancipated[.]

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

6